# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>NATHAN MELTON,<br><br>　　　　Defendant. | No. CR13-0014<br><br>ORDER REGARDING MOTION TO DISQUALIFY |

On the 7th day of May 2013, this matter came on for hearing on the Motion to Disqualify (docket number 15) filed by the Government on April 12, 2013. The Government was represented by Assistant United States Attorney Scott A. Verseman. Defendant Nathan Melton appeared personally and was represented by his attorney, Raphael M. Scheetz.

## I. RELEVANT FACTS AND PROCEEDINGS

On November 19, 2012, Defendant Nathan Melton appeared at a hearing before Chief Judge Linda R. Reade for the purpose of determining whether his supervised release should be revoked.[1] When a urine sample submitted by Defendant prior to the hearing tested presumptively positive for synthetic marijuana, Chief Judge Reade ordered the

---

[1] Defendant was on supervised release following completion of a prison term served as a consequence of a bank fraud conviction. *See United States v. Nathan Melton*, 1:08-cr-00082-LRR (N.D. Iowa).

hearing continued and Defendant detained.[2] As Defendant was taken into custody, an altercation ensued.

On March 20, 2013, Defendant was charged by indictment in the instant action with resisting a federal officer, in violation of 18 U.S.C. §§ 111(a)(1) & (b). Defendant entered a plea of not guilty and trial is scheduled before Judge Mark W. Bennett on July 1, 2013. Defendant is represented in this case by attorney Raphael M. Scheetz.[3] Mr. Scheetz also represented Defendant in the underlying action and was present at the revocation hearing on November 19, 2012.[4]

## II. ISSUE PRESENTED

The issue presented here is whether Mr. Scheetz, who witnessed the events underlying the instant charge, is thereby disqualified from representing Defendant at trial. The Government asserts that Mr. Scheetz is disqualified for three reasons: First, his participation in the trial will cause him to be an "unsworn witness"; second, he is likely to be a necessary witness for the defense; and third, there is a "strong possibility" that he could be a necessary witness for the Government. Defendant disputes the Government's arguments and asserts that he has a Sixth Amendment right to counsel of his own choosing.

---

[2] Ten days later, the United States Probation Office received notice from a national laboratory that the urine sample submitted by Defendant on November 19 tested negative for synthetic cannabinoids.

[3] At Defendant's initial appearance and arraignment on March 26, the Court appointed attorney Jane Kelly to represent Defendant. Ms. Kelly was permitted to withdraw, citing a conflict of interest, and the Court directed the Clerk of Court to "cause another CJA panel attorney to be appointed." Mr. Scheetz was then contacted by the CJA panel administrator, and entered an appearance on Defendant's behalf.

[4] Mr. Scheetz has also represented Defendant on other occasions.

## III. DISCUSSION

The Sixth Amendment provides that in all criminal prosecutions, the accused shall "have the Assistance of Counsel for his defence." More than eighty years ago, the Supreme Court noted that "[i]t is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice." *Powell v. Alabama*, 287 U.S. 45, 53 (1932). *See also United States v. Gonzalez-Lopez*, 399 F.3d 924, 928 (8th Cir. 2005) ("A non-indigent criminal defendant's Sixth Amendment rights encompass the right to be represented by the attorney selected by the defendant.").

"While an accused who is financially able to retain counsel of his own choosing must not be deprived of a reasonable opportunity to do so, the right to retain counsel of one's choice is not absolute." *Id.* at 929 (quoting *United States v. Vallery*, 108 F.3d 155, 157 (8th Cir. 1997)). The Sixth Amendment right to counsel was "designed to assure fairness in the adversary criminal process." *Wheat v. United States*, 486 U.S. 153, 158 (1988). Accordingly, "the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such." *Id.* at 159 (quoting *United States v. Cronic*, 466 U.S. 648, 657, n.21 (1984)).

> Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

*Id.*

Mr. Scheetz is a highly competent and experienced criminal defense attorney, who enjoys the confidence of Defendant. Mr. Scheetz represented to the Court at the time of hearing that Defendant "strongly" wants Mr. Scheetz to continue to represent him in this

3

case. The Government argues, however, that because Mr. Scheetz witnessed the events which give rise to the criminal charge, he is disqualified from representing Defendant at trial for multiple reasons.

The "principal reason" urged by the Government is that if Mr. Scheetz is permitted to appear at trial, he will be an "unsworn witness." In support of its argument, the Government relies primarily on *State v. Vanover*, 559 N.W.2d 618 (Iowa 1997). There, the defendant's court-appointed counsel interviewed certain witnesses having knowledge of the events, and testified at his client's parole revocation hearing in a separate case.[5] *Id.* at 623. The attorney was then listed by the state as a witness in the pending action. The trial court disqualified the attorney from representing the defendant at trial, setting up what the Iowa Supreme Court called a "classic clash between a criminal defendant's Sixth Amendment right to counsel of defendant's choice and a trial court's need to maintain the highest ethical standards of professional responsibility in the courtroom." *Id.* at 622.

In affirming Vanover's conviction, the Court recognized that "[t]he accused has a presumptive right to counsel of choice." *Id.* at 626. The Court also recognized, however, that the right is not absolute. The trial court may disqualify counsel "if necessary to preserve the integrity, fairness, and professionalism of trial court proceedings." *Id.* There is a "presumption" in favor of a defendant's counsel of choice, "but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Id.* (quoting *Wheat*, 486 U.S. at 164).

It is undisputed that Mr. Scheetz was a witness to the incident giving rise to this charge. A security camera captured some of the events.[6] Mr. Scheetz can be seen sitting

---

[5] A different attorney represented the defendant at the probation revocation hearing.

[6] Government's Exhibit 1 is a DVD with a video of the November 19 hearing (continued...)

at counsel table on the far right hand side of the image. Defendant, who was apparently sitting on Mr. Scheetz's left, cannot be seen. A deputy marshal, who was sitting approximately eight feet to Mr. Scheetz's right, can be seen getting up and walking toward the area where Defendant was located. The events which transpire next are off-camera. Mr. Scheetz can be seen standing up and, after approximately one minute, backing away from the area. Shortly after that time, the scuffle comes within camera range, with Mr. Scheetz continuing to watch as he crossed to the other side of the courtroom. At one point, Mr. Scheetz can be seen walking over to counsel table and, apparently, speaking to Defendant.[7] The altercation continued, going back off-camera. Mr. Scheetz returned to the other side of the courtroom, while continuing to observe the incident.

The Government asserts that under these circumstances, Mr. Scheetz would be an unsworn witness if he is permitted to represent Defendant at trial. *Vanover*, 559 N.W.2d at 632 ("An attorney acts as an unsworn witness when the attorney's relationship to the client results in the attorney having first-hand knowledge of events presented at trial."). If an attorney is an unsworn witness, his role "as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear on oath or be subject to cross-examination." *Id.* at 633 (quoting *United States v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993)). Here, a substantial

---

[6](...continued)
(without sound), an audio recording of the incident itself, and a video "clip" of the time period encompassing the incident.

[7] What Mr. Scheetz may have said is unknown. His voice cannot be heard on the audio recording. Mr. Scheetz declined the Government's request for an interview, and the Government elected not to subpoena him to appear before the grand jury. In its brief, the Government asserts that United States Probation Officer Peter Koenig told the Government that Mr. Scheetz was attempting to get the Defendant to calm down. Government's Brief (docket number 15) at 3.

portion of the events, including the critical actions at the beginning of the altercation, occur off-camera. That is, Mr. Scheetz has "first-hand knowledge" of critical events which are not shown on the video recording.

Defendant argues that "[t]he government has too little faith in the jurors of the Northern District of Iowa."[8] Defendant notes that the jury will be instructed that comments or arguments of the attorneys are not to be considered as evidence. A jury is presumed to follow the Court's instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Moreover, Mr. Scheetz acknowledges in Defendant's resistance that "both attorneys have ethical and legal obligations during opening statements and closing arguments not to personally vouch for the evidence."[9]

The Court has no doubt regarding Mr. Scheetz's intention to comply with the highest ethical standards. Occasionally, however, an attorney may impart personal knowledge in a question, comment, or argument, notwithstanding his best intentions. For example, in *State v. Thomson*, 219 Iowa 312, 257 N.W. 805 (Iowa 1934), the Court reversed the defendant's conviction when the prosecutor made himself an unsworn witness in his closing argument. While the Court believed that the attorney's statements "doubtless resulted from the heat of argument," it also concluded that it was "virtually incurable." *Id.* at 805. The trial court in *Thomson* sustained the defendant's objection to the argument and warned the jury, but the Supreme Court observed that "[w]hether its influence could be withdrawn by a mere ruling of the court would be a mere guess at best." *Id.* at 806.

The Court concludes that if Mr. Scheetz is permitted to appear as an attorney at the trial in this case, he may become an unsworn witness. As noted by the Government's attorney at the instant hearing, "it's simply human nature for somebody to put more

---

[8] Defendant's Resistance (docket number 18) at 7.

[9] *Id.* at 8.

credence in the words of somebody who was present during an event and witnessed it than someone who was not there." It is clear that Mr. Scheetz observed the events giving rise to this charge, including the critical actions taken at the beginning of the incident. Despite his best intentions, there is a substantial risk that Mr. Scheetz's personal knowledge of the events will infect his questions, comments, or argument. An attorney's potential status as an unsworn witness "is a reason for disqualification under DR 5-102(A) for several reasons."[10] *Vanover*, 559 N.W.2d at 632-33. As applicable here, an attorney's role "as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear on oath or be subject to cross-examination." *Id.* at 633.

Alternatively, the Government argues that Mr. Scheetz should be disqualified from appearing as counsel at trial, because he may be called as a witness. Defendant's resistance to the motion states that "[t]he defense does not plan on calling [Mr. Scheetz] as a trial witness."[11] The Government is "concerned," however, that during an appeal or *habeas corpus* action, a different attorney may argue that it was ineffective assistance of counsel not to call Mr. Scheetz as a witness. Specifically, Defendant's sister testified before the grand jury that Mr. Scheetz told her that Probation Officer Peter Koenig "physically got involved" in the altercation and "basically assaulted him."[12] When one of the grand jurors followed up with additional questions, however, Defendant's sister

---

[10] On July 1, 2005, the Disciplinary Rules were rescinded and replaced by the Iowa Rules of Professional Conduct. DR 5-102 is now found in Rule 32:3.7.

[11] Defendant's Resistance (docket number 18) at 8.

[12] Grand Jury Transcript (docket number 24-1) at 20.

testified that "I don't want to say assaulted because he didn't use that word."[13] At the instant hearing, Mr. Scheetz denied that he told anyone that Probation Officer Koenig assaulted the Defendant.

In his resistance, Defendant states that "it is almost a certainty that [Mr. Scheetz] will not be called as a witness by subsequent defense counsel."[14] Defendant notes that at the rescheduled revocation hearing on December 6, 2012, Mr. Scheetz described Defendant's actions as "reprehensible" and "disgusting."[15] Moreover, in his resistance to the instant motion, Mr. Scheetz wrote that "[w]hile the deputy marshals were taking defendant into custody, he resisted."[16]

The defense does not "plan" on calling Mr. Scheetz as a witness at trial, and it seems unlikely that the failure to do so could be considered ineffective assistance of counsel in a later proceeding. Another possibility not discussed at the hearing, however, is whether Mr. Scheetz could be called by Defendant to rebut testimony by a prosecution witness, which Mr. Scheetz believed to be inaccurate or untruthful. That is, if a government witness testifies untruthfully, and based on his personal knowledge of the events Mr. Scheetz knows that the testimony is not truthful, his appearance as an attorney at the trial would effectively preclude his testimony rebutting the Government's witness.

The Government also asserts that Mr. Scheetz could be called as a government witness. While Mr. Scheetz was not forced to appear before the grand jury, the Government believes — for the reasons set forth above — that his testimony may be

---

[13] *Id.* at 22.

[14] Defendant's Resistance (docket number 18) at 9.

[15] Transcript of December 6, 2012 Hearing (Government's Exhibit 2) at 44.

[16] Defendant's Resistance (docket number 18) at 4.

favorable to the Government.[17] As Defendant notes, the Government has nine or ten other witnesses to the events — including Chief Judge Linda R. Reade — and does not intend to call Mr. Scheetz during its case-in-chief. All of the Government's witnesses are federal employees. The Government's attorney argued that "if the defense has some success in challenging these witnesses for bias, the government may wish to call a witness who observed these incidents and who cannot be attacked for being biased;" that is, Mr. Scheetz. While Defendant minimizes the risk that a jury will conclude the Government's witnesses — including a federal judge — are biased, the Court believes that it is a valid consideration.

The Iowa Rules of Professional Conduct prohibit a lawyer from acting as an advocate at a trial in which he is likely to be a "necessary" witness. Iowa R. of Prof'l. Conduct 32:3.7(a). Mr. Scheetz asserts that the rule is inapplicable here because his testimony at trial is not "necessary." The parties have not cited any cases which have defined "necessary" in this context, and the Court has found none.

The Sixth Amendment demands that motions to disqualify trial counsel be given the most serious consideration. "[T]he district court must carefully balance the defendant's right to be represented by the counsel of his choice against the court's interest in 'the orderly administration of justice.'" *Gonzalez-Lopez*, 399 F.3d at 929. "[B]ecause the potential for abuse by opposing counsel is high, the Court subjects such motions to particularly strict scrutiny." *Droste v. Julien*, 477 F.3d 1030, 1035 (8th Cir. 2007). *See also United States v. Panzardi Alvarez*, 816 F.2d 813, 816 (1st Cir. 1987) ("The sixth amendment right to counsel requires courts to pay considerable deference to a criminal

---

[17] In deciding not to subpoena Mr. Scheetz to appear before the grand jury, the Government's attorney asserted at the hearing that while it was "very desirous of knowing what Mr. Scheetz had to say," it balanced that need with the potential of interfering with Mr. Scheetz's ongoing representation of Defendant on the appeal of the underlying action.

defendant's actual choice of counsel."); *United States v. Diozzi*, 807 F.2d 10, 12 (1st Cir. 1986) (warning that disqualification of defense counsel "should be a measure of last resort" and adopted only after the government meets "a heavy burden of establishing that disqualification is justified"). After due consideration to Defendant's right to be represented by his preferred attorney, as comprehended by the Sixth Amendment, the Court nonetheless concludes for the reasons urged by the Government that Mr. Scheetz is disqualified from appearing as trial counsel in this case.[18]

---

[18] At the hearing, the Government argued that Defendant's right to "choose" his attorney is not implicated in this case because Mr. Scheetz is court-appointed. While it is true that in *Gonzalez-Lopez*, the Eighth Circuit spoke in terms of "a non-indigent criminal defendant" and "the right to privately retain counsel of choice," 399 F.3d at 928, the Court believes that these references are simply to make clear that an indigent defendant is not entitled to choose his court-appointed counsel *in the first instance*. That is, if Defendant had *asked* that Mr. Scheetz be court-appointed, it is clear the Court would not be required to honor that request. *Caplin & Drysdale v. United States*, 491 U.S. 617, 624 (1989) ("The [Sixth] Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts."). The rule may be different, however, once an attorney has been court-appointed, and the government seeks to have him disqualified over the defendant's objection. In his concurring opinion in *Morris v. Slappy*, 461 U.S. 1 (1983), Justice Brennan observed that "where an indigent defendant wants to preserve a relationship he has developed with counsel already appointed by the court, I can perceive no rational or fair basis for failing at least to consider this interest in determining whether continued representation is possible." *Id*. at 22. Moreover, the leading Iowa case on disqualification of trial counsel — *Vanover* — discusses extensively the Sixth Amendment's role in the disqualification of counsel, without placing any importance on the fact that Vanover's attorney was court-appointed. 559 N.W.2d at 623. In finding that Mr. Scheetz is disqualified from representing Defendant at trial, the Court has *not* relied on his court-appointed status. That is, even if Mr. Scheetz is privately retained by Defendant, he is nonetheless disqualified from appearing as counsel at trial.

## IV. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Motion to Disqualify (docket number 15) filed by the Government is **GRANTED**. Mr. Scheetz will not be permitted to represent Defendant at the trial.

2. The Clerk of Court shall cause another CJA panel attorney to be appointed to represent Defendant. After the new attorney has appeared on Defendant's behalf, Mr. Scheetz's appearance will be deemed **WITHDRAWN**.

DATED this 10th day of May, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA